FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 FEB 26 PM 4: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 0 1 1999

| | |
|---|---|
| AMERICAN INTERSTATE INSURANCE COMPANY, ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NUMBER CV-97-C-2898-S |
| SOUTHERN TIMBER HARVESTERS, INC; RICKY FREEMAN; JANICE FREEMAN; PAUL BROOKS; ) | |
| Defendants. ) | |

MEMORANDUM OF OPINION
GRANTING SUMMARY JUDGMENT

On October 31, 1997, the plaintiff American Interstate Insurance Company ("American Interstate"), brought this action requesting a declaratory judgment that its liability policy issued to the defendant Southern Timber Harvesters, Inc. ("Southern Timber") does not afford coverage for an accident that occurred on May 16, 1997. Pending before the Court is Plaintiff's Motion for Summary Judgment. Upon careful consideration of all submitted materials, affidavits, and briefs, this Court concludes that the plaintiff is entitled to summary judgment as a matter of law based on the undisputed facts.

I.

Defendant Paul Brooks was an employee of Southern Timber.

1

On May 16, 1997, while pulling a utility trailer owned by Southern Timber with his truck, an accident occurred. Brooks' truck and another vehicle collided, resulting in the deaths of the passengers of the second vehicle, John Mann and Una Belle LaCroix. The estates of the two decedents brought civil actions in the Circuit Court of Walker County, Alabama against the defendants in this case. See Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), Exs. B & C.[1]

The plaintiff issued to Southern Timber a policy of general liability insurance which was in effect on May 16, 1997. See Plaintiff's Motion D. The plaintiff seeks a declaration from the Court that based on an auto exclusion, its policy does not afford insurance coverage for the complaints made by the decedents' estates in state court.

A standard "auto" exclusion appears in Section I of the policy:

> This insurance does not apply to:
>
> **g. Aircraft, Auto or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading" . . . .

---

[1] Mary Hites, as Administratrix of the Estate of Una Belle LaCroix, deceased, and Brent Thornley, as County Administrator of the Estate of John Woodrow Mann, deceased, are intervenors in this case.

Plaintiff's Motion, Ex. D at 3. The policy then lists exceptions to the auto exclusion, which include: "'Bodily injury' or 'property damage' arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of 'mobile equipment.'" Id. Paragraph "h" which immediately follows is labeled "Mobile Equipment."

The policy defines its terms in Section V. "Auto" refers to "a land motor vehicle, <u>trailer</u> or semitrailer designed for travel on public roads, including any attached machinery or equipment. <u>But 'auto' does not include 'mobile equipment.</u>'" Id. at 10 (emphasis added). Mobile equipment is defined in a separate paragraph.[2]

---

[2] 'Mobile equipment' means any of the following types of land vehicles, including any attached machinery or equipment:
a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
b. Vehicles maintained for use solely on or next to premises you own or rent;
c. Vehicles that travel on crawler treads;
d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
   (1) Power cranes, shovels, loaders, diggers or drills; or
   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting

3

The defendants and intervenors allege that the insurance agent, Darrell Bullard, who issued the policy to Southern Timber, made oral representations to defendant Ricky Freeman that the policy would provide full coverage for its business needs. See Freeman Affidavit, Defendants' and Intervenors' Opposition to Plaintiff's Motion for Summary Judgment, Ex. ("PE") A. Southern Timber had contracted to do work for Drummond Company, Inc. ("Drummond"). Drummond requires that logging companies with which it deals obtain full and complete insurance. See Nichols Affidavit, PE B.

Effective March 6, 1997, the American Interstate insurance policy was changed to included Drummond as an additional insured.

---

        and well servicing equipment; or
        (2) Cherry pickers and similar devices used
        to raise or lower workers;
f.  Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.
    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
        (1) equipment designed primarily for:
            (a) Snow removal;
            (b) Road maintenance, but not construction or resurfacing; or
            (c) Street cleaning;
        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

Def. Mot. for Summ. J., Ex. D, at 12 ¶ 11.

See PE C. A notice of this change was issued. It reads in relevant part:

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Name of Person or Organization:
>
> Drummong, Inc. [sic]
>
> . . .
>
> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

Id.

## II.

The law governing summary judgment is well settled. Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts, and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Once the movant has met its burden of establishing the lack of a genuine issue as to any material facts, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of material fact. See Chanel, Inc. v. Italian Activewear, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). The court must view the facts in a light favorable to the non-moving party.

5

III.

After reviewing the entire record, and construing the facts in a light most favorable to the defendants, this Court finds that there are no genuine issues of material fact and that the plaintiff is entitled to judgment as a matter of law.

A.

The American Interstate liability policy unambiguously precludes coverage for the May 1997 accident. It is undisputed that a trailer is an "auto" as defined in Section V.2. of the policy. Therefore, the wrongful death action falls within the auto exclusion for bodily injury arising out of the maintenance of an auto.

The Court is unconvinced by the defendants' and intervenors' argument that the auto exclusion is rendered ambiguous because of the "mobile equipment" exception. First, the trailer does not fall into either of the definitions of mobile equipment set forth in Section V.11.a.-f. Equally important, trailers are explicitly included in the definition of "auto." Autos are clearly excluded from coverage.

Likewise the Court finds unwarranted the intervenors' argument that the March 1997 policy change created ambiguity. Nothing in that endorsement notice purports to alter the substantive coverage provided by the policy. The only change indicated by the notice is that Section II of the policy will be

amended to include Drummond as an additional insured. The notice clearly states that it is only affecting Section II of the policy. As the auto exclusion is in Section I and the definitions are in Section V, there is no viable argument that the endorsement renders the auto exclusion language ambiguous.

B.

Finally, the defendants' allegation of a material misrepresentation by American Interstate's agent is irrelevant to the issue at law.

It is longstanding Alabama law that oral representations made in the negotiation process are merged into the final accepted policy. See Bibb Allen, Alabama Liability Insurance Handbook § 3-3 (1996). In other words, under this rule, "where an insured accepts a policy, he or she is bound by its terms although the policy does not correspond to the preliminary negotiations." Id; see also Langley v. Mutual Fire, Marine and Inland Ins. Co., 512 So.2d 752, 766 (Ala. 1987) (citing other cases), overruled on other grounds by Hickox v. Stover, 551 So.2d 259 (Ala. 1989), overruled on other grounds by Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997).

This case is about coverage under the plaintiff's insurance policy and not about the plaintiff's ultimate liability to Southern Timber for potential causes of action. The defendants and intervenors may separately pursue their theories of liability

7

under the doctrines of respondeat superior, tort, or breach of contract. See, e.g., Continental Elec. Co. v. American Employers' Ins. Co., 518 So.2d 83 (Ala. 987) (separating question of law as to alleged ambiguity in insurance contract from question of fact as to insurance agent's alleged misrepresentation).

CONCLUSION

Based on the foregoing, there being no disputed issue of fact, Plaintiff's Motion for Summary Judgment will be granted, by separate order.

Done this 26th day of February, 1999.

_____
United States District Judge
U.W. Clemon

8